## PUBLIC EMPLOYEES' LOCAL 71, Appellant,

v.

## STATE of Alaska, Appellee.

### No. S–2726.

Supreme Court of Alaska.

June 9, 1989.

Kevin Dougherty, Anchorage, for appellant.

Virginia B. Ragle and Susan D. Cox, Asst. Attys. Gen., and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

### OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

BURKE, Justice.

## I. INTRODUCTION

Public Employees Local 71 (Local 71) and Confidential Employees Association (CEA) appeal the decision of the superior court, affirming the decision of the State, Labor Relations Agency (Agency), which dismissed the unfair labor practice charges filed against the state. The first issue on appeal is whether a collective bargaining agreement is subject to legislative approval of its monetary terms. The second issue is whether the state violated its duty to bargain in good faith.

## II. FACTS

On June 4, 1984, Local 71 entered into a collective bargaining agreement with the state, which was in effect from January 1, 1984, through December 31, 1986. The terms of the contract called for salary increases of 0% during the first fiscal year of the contract (July 16, 1984—July 16, 1985), 5% during the second fiscal year (July 16, 1985—July 16, 1986), and 3.8% during the third fiscal year (July 16, 1986—July 16, 1987).[1]

In 1985, the legislature appropriated the necessary funds for the 5% salary increase. However, the legislature also adopted Leg-

---

1. CEA also entered into a collective bargaining agreement with the state providing for salary increases. CEA joins in Local 71's arguments.

islative Resolution No. 19, which stated "that the Alaska State Legislature will not fund the monetary terms of the existing contracts for future years" and directed the parties to renegotiate the monetary terms proposed for fiscal year 1987. The state and unions were unable to renegotiate the salary increases.

At the beginning of the 1985 legislative session, the governor requested funding for the 3.8% salary increase in House Bill 500. Subsequently, after a projected revenue decline, the governor submitted to the legislature a revised operating budget consisting of $120,000,000 in proposed reductions. The reductions did not refer to the 3.8% pay increase. In 1986, the legislature refused to fund the 3.8% salary increase.[2]

On April 17, 1986, Local 71 filed an unfair labor practice charge against the State of Alaska. A hearing was held on July 18, 1987. On October 21, 1986, the agency issued its order dismissing the unfair labor practice charge. Local 71 appealed. The superior court affirmed the agency's dismissal of the unfair labor practice charge. This appeal followed.

## III. STANDARD OF REVIEW

■ When an appeal of an agency decision involves a question of statutory interpretation one of two standards will apply. *Tesoro Alaska Petroleum Co. v. Kenai*

*Pipe Line Co.*, 746 P.2d 896 (Alaska 1987). The "rational basis" test is used when the issue involves agency expertise or the determination of fundamental policies within the agency's statutory function. *Id.* at 903. If the agency's decision is supported by the facts and has a reasonable basis in the law, the decision will be upheld. *Id.*

■ However, when the statutory interpretation does not involve agency expertise, or the agency's specialized knowledge and experience would not be particularly probative, the reviewing court can independently review the decision and substitute its own judgment. *Id.*

## IV. DISCUSSION

### A. *Legislative Approval*

■ The first issue is whether a collective bargaining agreement is subject to legislative approval of its monetary terms. This issue is a question of statutory interpretation and should be reviewed under the independent judgment standard. Alaska Statute 23.40.215(a) provides that the "monetary terms of any agreement entered into under the Public Employment Relations Act are subject to funding through legislative appropriation."[3] The initial approval of the monetary terms of any agreement is a "nonbinding, advisory expression of legislative intent."[4] AS 23.40.215(b).

**2.** The legislature stated in section 20 of the budget act:

> Failure of the legislature to adopt a separate appropriation item for the pay raise constitutes rejection of the monetary terms of the collective bargaining agreements in accordance with AS 23.40.215.

AS 23.40.215 is set forth in full at note 3.

**3.** AS 23.40.215 provides:

> (a) The monetary terms of any agreement entered into under the Public Employment Relations Act are subject to funding through legislative appropriation.
>
> (b) The Department of Administration shall submit the monetary terms of an agreement to the legislature within 10 legislative days after the agreement of the parties, if the legislature is in session, or within 10 legislative days after the convening of the next regular session. The legislature shall advise the parties by concurrent resolution if it approves or disapproves of the monetary terms within 60

legislative days after the agreement is submitted to the legislature. The approval of the monetary terms of an agreement under this subsection is a nonbinding, advisory expression of legislative intent. If within 60 legislative days after the agreement is submitted the legislature advises the parties by concurrent resolution that it disapproves the monetary terms of the agreement, the parties may resume negotiations.

**4.** In its brief, Local 71 relied solely on *Boston Teachers Union, Local 66 v. School Committee of Boston*, 386 Mass. 197, 434 N.E.2d 1258 (1982). In *Boston Teachers*, the teachers' union sought declaratory and injunctive relief to compel the mayor to submit a budget to the city council which would provide appropriations for the salary increases in the second year of a collective bargaining agreement. The Massachusetts court held that approval by the legislature of the monetary terms of the contract was statutorily required throughout the contract's three-year term:

Additionally, under Alaska's constitutional system funding of an agreement is constitutionally relegated to the legislature. Alaska Const. art. IX, § 13. The Public Employment Relations Act recognizes this constitutional requirement in AS 23.40.-215(a).

From our independent review of the statute, it is clear that the monetary terms of a collective bargaining agreement are not effective until the funds are appropriated by the legislature.[5] Each year the monetary terms of a collective bargaining agreement are subject to independent legislative approval.

### B. *Duty to Bargain in Good Faith*

██ The second issue is whether the state violated its duty to bargain in good faith.[6] We hold that it did not. The governor sought funding for the bargained pay raise when he submitted his executive budget, which included a request for the 3.8% pay raise. The governor's subsequent proposal to the legislature, suggesting $120,-000,000 in budget cuts, did not constitute a withdrawal of the governor's request to fund the pay raise, because the 3.8% pay raise was not among the reductions.

The decision is AFFIRMED.

---

We think that the requirement in § 7(b), that the employer submit a request to the appropriate legislative body for an appropriation sufficient to fund the cost items of the agreement, applies only to the funds needed in the first year of the agreement, and that an appropriation funding the first year of the contract constitutes an approval by the legislative body of the entire agreement. The context of this provision suggests that this is the proper interpretation.... In order for § 7(b) to be construed consistently with § 7(a), authorizing contracts of three years' duration, the statute must be read as contemplating an initial approval of the contract by the legislative body, followed by appropriations as a matter of course in the succeeding years of the contract.

*Id.* at 1263. *See* Mass.G.L. c. 150E ¶ 7.

The Massachusetts court also found support for its position in the legislative history of the statute, which provided that if there is a conflict between the terms of a collective bargaining agreement and the statute, the terms of the agreement prevail. *Id.* at 1263. Based on *Boston Teachers*, Local 71 asserts that once the legislature approves the monetary terms of the first year of a collective bargaining agreement, the legislature must fund the subsequent years. However, *Boston Teachers* is distinguishable from the case at hand because the governing statutes in the two states are clearly different. Therefore, *Boston Teachers* is not persuasive.

5. The superior court for the first judicial district has also held that the monetary terms of an agreement are not enforceable until the legislature appropriates the required funding. *Alaska Public Employees Ass'n v. State*, No. 1JU 79 538 Civ. and *Public Employees' Local 71, AFL–CIO v. State*, No. 1JU 79 983 Civ. (Alaska Super., Ct. Dec. 24, 1979).

6. Additionally, Local 71 and CEA assert that the agency's decision is not supported by substantial evidence and that the agency failed to properly review whether the state supported the pay raise throughout the entire legislative session. Both of these arguments are without merit.